UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-261 (RWR) |
| | ) | |
| ANTHONY BARLOW, | ) | |
| | ) | |

MOTION TO SUPPRESS EVIDENCE,
INCORPORATED MEMORANDUM IN SUPPORT THEREOF, AND
REQUEST FOR EVIDENTIARY HEARING

Anthony Barlow, by his attorney, Rita Bosworth, Assistant Federal Public Defender, respectfully moves this court to suppress physical evidence, statements, and any other tainted evidentiary "fruits" resulting from the investigation, searches, and arrest in this case.  This motion is made pursuant to FED. R. CRIM. P. 12(b)(3), and is supported by the discussion below.  An evidentiary hearing on this motion is respectfully requested.

STATEMENT OF FACTS[1]

Mr. Barlow was charged, in a one-count indictment filed December 8, 2005, with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

According to the law enforcement reports filed in this case, on November 12, 2004, MPD Detective James, Detective Sydnor and Officer Alvarado boarded Amtrak train 79 and spoke with Mr. Barlow, who was a passenger on the train.  At some point the officer and detectives observed a blue duffel bag in the overhead compartment of the train.  They searched the bag and

---

[1]This statement of the facts is a summary based on the US Marshal and ATF reports provided as discovery in this case.  By including in this motion the facts as alleged by government witnesses, Mr. Barlow does not in any way concede that these facts are accurate or true.

apparently found a revolver and ammunition in the bag. They seized the bag but did not arrest Mr. Barlow. Mr. Barlow apparently made a number of statements before and after the search of the bag. After the seizure of the bag, a saliva buccal cell sample was taken from Mr. Barlow's cheek.

On December 1, 2005, Deputy United States Marshals Pitruzzello, Tessari and McCloud arrested Mr. Barlow at his home in New York. After the Marshals apprehended Mr. Barlow, Deputy Tessari searched a bag hanging by the closet and allegedly found a gun. Mr. Barlow apparently made statements after the gun was found.[2]

## ARGUMENT

**I. THE PHYSICAL EVIDENCE RECOVERED ON NOVEMBER 12, 2004, MUST BE SUPPRESSED AS THE TAINTED FRUIT OF AN ILLEGAL SEARCH AND SEIZURE.**

The Fourth Amendment of the United States Constitution requires that all searches and seizures be "reasonable." Vernonia School District 47J v. Acton, 515 U.S. 646 (1995). In order for warrantless searches and seizures to be "reasonable," they must be supported by a limited exception to the warrant requirement, such as probable cause. New Jersey v. T.L.O., 469 U.S. 325, 341-42 (1985). In the instant case, no probable cause existed. On November 12, 2004, MPD Detective James, Detective Sydnor and Officer Alvorado approached Mr. Barlow on the Amtrak train and spoke with him. At no point in the conversation did Mr. Barlow give them any reason to search the blue duffel bag that was in the overhead compartment, nor was there any other basis giving rise to probable cause to search the blue duffel bag. Because there was no

---

[2] Though these are the alleged facts set forth by the discovery provided thus far, Mr. Barlow reserves his right to supplement this motion should he receive additional information from the government. In its Motion in Limine Seeking Admission of Evidence Pursuant to Federal Rule of Evidence 404(b), filed on January 19, 2006, the government indicated that this may occur.

probable cause, the search and seizure of the bag was illegal. Exclusion of the evidence recovered as a result of this Fourth Amendment violation–in this case, of the bag and its contents– is the appropriate remedy. Wong Sun v. United States, 371 U.S. 471 (1963).

## II. ALL STATEMENTS MADE BY MR. BARLOW ON NOVEMBER 12, 2004, AND DECEMBER 1, 2005, MUST BE SUPPRESSED BECAUSE THEY WERE INVOLUNTARY AND MADE IN VIOLATION OF MIRANDA.

The government has alleged that Mr. Barlow made statements on the train and during his arrest. Before introducing those statements at trial, either in its case-in-chief or as impeachment or rebuttal evidence, the government bears the burden of proving that the statements were voluntary. See Lego v. Twomey, 404 U.S. 477 (1972). The test for voluntariness is whether a statement is the "product of an essentially free and unconstrained choice by its maker." Culombe v. Connecticut, 367 U.S. 568, 602 (1961). The determination of whether a statement was made voluntarily "requires a careful evaluation of all the circumstances of the interrogation." Mincey v. Arizona, 437 U.S. 385, 402 (1978). The Court must consider the "totality of the circumstances" in deciding whether the defendant made his statement voluntarily. Fikes v. Alabama, 352 U.S. 191 (1957); see also Gallegos v. Colorado, 370 U.S. 49 (1962) (determination of whether an accused's statement was made involuntarily so as to render it inadmissible requires close scrutiny of the facts of each individual case); Clewis v. Texas, 386 U.S. 707 (1967).

Specifically, the Court must examine the efforts to overbear the defendant's free will in relation to his capacity to resist those efforts. Davis v. North Carolina, 384 U.S. 737 (1966); Culombe, 367 U.S. at 607. The Court must examine the defendant's "background, experience, and conduct," *North Carolina v. Butler*, 441 U.S. 369, 375 (1979), to determine whether his statements were the product of a rational intellect and a free will. Blackburn v. Alabama, 361

U.S. 199, 208 (1980). Here, the evidence at a hearing will show that any statements made by Mr. Barlow were made involuntarily and thus must be suppressed under the Fifth Amendment.

Even if the statements were made voluntarily, Miranda requires suppression of Mr. Barlow's statements during the government's case-in-chief because he was not adequately apprised of his right against self-incrimination prior to undergoing custodial interrogation. See, e.g., Pennsylvania v. Muniz, 496 U.S. 582, 110 S. Ct. 2638, 2643-44 (1990). A person is in "custody" under Miranda when he "has been . . . deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Whether a person is in custody depends upon "how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984). "[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

The government bears the heavy burden of establishing that proper Miranda warnings were given to the defendant and that an intelligent and voluntary waiver of those rights occurred prior to questioning of the defendant. Miranda, 384 U.S. at 475. As the Court recognized in Moran v. Burbine, 475 U.S. 412 (1986),

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

Id. at 421.

In the case at hand, there were two MPD detectives and one MPD officer on the train with Mr. Barlow on November 12, 2004, and at least one of the MPD officials questioned Mr. Barlow. This situation constituted custodial interrogation because Mr. Barlow's freedom of movement was constrained by the presence of the three MPD officials. Accordingly, any statements he made while on the train must be suppressed. Similarly, when the police officers placed Mr. Barlow under arrest and in handcuffs on December 1, 2005, he was clearly in custody for purposes of Miranda. Accordingly, any statements made at this time were the product of custodial interrogation, and must also be suppressed.

### III. MR. BARLOW'S BUCCAL CELL SAMPLES MUST BE SUPPRESSED BECAUSE THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT DID NOT ESTABLISH PROBABLE CAUSE TO SUPPORT THE SEARCH AND SEIZURE OF MR. BARLOW'S CELLS.

The Fourth Amendment provides:

> ...and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

The test for probable cause for the issuance of a search warrant is whether the facts presented to the magistrate establish a "substantial probability" that the items sought will be found at the location sought to be searched. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317 (1983).

In the present case, the affiant provides absolutely no evidence that the blue duffel bag or the items inside belonged to Mr. Barlow. He states the following:

> MPD Detective Lorenzo was speaking with Anthony Barlow when Barlow stated that he was not traveling with any bags. Detective James and MPD Officer Erick Alvarado observed a blue duffel bag located in the overhead storage area where Barlow was sitting. Barlow stated that it was not his bag, and did not know whom the bag belonged to.

In addition, the officers' search of the bag revealed absolutely nothing linking Mr. Barlow to the bag or its contents, and after the search, "Barlow again stated that the bag and its contents were not his." The affidavit provides no information that would give rise to the belief that the bag or its contents belonged to Mr. Barlow. Absent any reliable corroboration, this affidavit was insufficient to establish probable cause to obtain a saliva buccal cell sample from Mr. Barlow, and the cell sample therefore should be suppressed.

**IV. PHYSICAL EVIDENCE SEIZED DURING THE ARREST MUST BE SUPPRESSED BECAUSE IT WAS RECOVERED AS A RESULT OF AN ILLEGAL SEARCH**

When an in-home arrest is taking place, the Fourth Amendment "permits a properly limited protective sweep . . . when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie, 494 U.S. 325, 336 (1990). However, such a protective sweep is extremely limited. "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Id., 494 U.S. at 327. The sole purpose of the sweep is to secure the safety of the individuals in the home; it is not an opportunity for officers to conduct an unjustified search.

In the instant case, the officers were conducting an illegal search when they discovered the gun during Mr. Barlow's arrest. According to a report of Deputy United States Marshal Tessari, Mr. Barlow was already being handcuffed when Deputy Tessari "noticed a black bag hanging on a hook" in the closet where Mr. Barlow had been hiding. Despite the fact that Mr. Barlow was already constrained by handcuffs and therefore no longer posed a threat to the officers, Deputy Tessari proceeded to search the black bag and recover a gun. As demonstrated

above, officers are permitted to conduct a protective sweep during in-home arrests, but once the area is secured, there is no further search that may be conducted. Deputy Tessari's search of the black bag took place after the officers had already apprehended Mr. Barlow and was therefore illegal. Accordingly, the gun that was found in the black bag must be suppressed as the tainted fruit of an illegal search. <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963).

## CONCLUSION

For the foregoing reasons, and any other reasons that the Court may deem just and reasonable, Mr. Barlow requests that the Court suppress the blue duffel bag and its contents, the saliva buccal cell sample taken from Mr. Barlow, the gun found during Mr. Barlow's arrest, and all statements made by Mr. Barlow on November 12, 2004, and December 1, 2005, along with any other evidence or statements obtained by the officers in violation of the Fourth and Fifth Amendments. Mr. Barlow respectfully requests an evidentiary hearing on this motion.

Respectfully submitted,

A. J. KRAMER
Federal Public Defender

_____
RITA BOSWORTH
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, DC 20004
(202) 208-7500