UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. -05-261 (RWR) |
| | : | |
| ANTHONY BARLOW, | : | |
| Defendant. | : | |
| | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant a term of imprisonment of 70 months incarceration. The government agreed, as part of the plea agreement, not to oppose the defendant's request to be sentenced at the low-end of the sentencing range. The government's reason for this recommendation is set forth more fully below.

**I.    BACKGROUND**

On November 12, 2004, at approximately 11:00 a.m., plain clothes members of the Metropolitan Police Department's (MPD) Major Narcotics Branch conducted interdiction operations at Union Station in Washington, D.C.[1] The MPD officers boarded Amtrak Train 79 and spoke to passengers on that train. MPD Detective Lorenzo James spoke to the defendant, Anthony Barlow, who was seated on the train and stated he was en route to Raleigh, North Carolina. Detective James identified himself and asked the defendant if he had any luggage with him, and the defendant said that he was not traveling with any bags. The officers asked similar questions of other passengers on the train**.** Detective James and MPD Officer Erick Alvarado observed a blue duffel bag located in

---

[1]    Plain clothes MPD officers run these operations on buses and trains on a daily basis.

the overhead storage area immediately above where the defendant was seated. The officers asked the defendant if the duffel bag was his. The defendant said the bag was not his and that he did not know to whom it belonged. Detective James and Officer Alvarado asked each passenger in that same train car if the bag belonged to any of them. None of the passengers claimed the bag.

Once the defendant and all the other passengers in that train car denied ownership of the duffel bag, the officers searched the abandoned bag. The officers' search of the abandoned bag revealed clothing, a toothbrush, toothpaste, cell phone accessories, and a Colt MKIII .357 caliber revolver, Serial No. 19901U. The gun was loaded with six rounds of .357 ammunition.

After finding the gun, the MPD officers asked the defendant if they could ask him questions slightly away from the other passengers, in the area between train cars. The defendant agreed. Once there, the officers only asked the defendant for his identification and his travel itinerary. The defendant gave the officers his identification and again claimed that he did not own the bag, stated that he was on his way to a funeral in Raleigh, North Carolina, and offered to be fingerprinted and searched. According to Detective James, the defendant appeared to be nervous and spontaneously asked if he was in trouble. Detective James did not respond, and the officers seized the bag. The defendant continued on his way to North Carolina.

Detective James thereafter contacted Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agent (SA) Jeff Meixner for assistance with the firearms investigation. SA Meixner processed the firearm and the ammunition for latent fingerprints. On January 21, 2005, a magistrate judge issued a search warrant to obtain blood, saliva, and buccal (cheek) cell samples from the defendant. On or about March 17, 2005, the defendant's mouth was swabbed with a cotton swab, to obtain his DNA. On or about May 25, 2005, a DNA analysis was performed on the firearm and

on the defendant's buccal cell sample. The results of the test revealed the defendant's DNA profile on the firearm, with a likelihood of a random match in the African American community of 1 in 220 million.

On December 1, 2005, Deputy U.S. Marshals (DUSM) Joe Pitruzzello, Doug McCloud, and Frederick Tessari, and U.S. Marshal Senior Inspector Brendan O'Neill, executed an arrest warrant for the defendant at his mother's apartment in Brooklyn, New York. The Marshals conducted an initial sweep of the apartment and found the defendant's brother in one of the bedrooms. The Marshals continued to look for the defendant, and DUSM Pitruzzello found him on a closet floor covered by clothing. As DUSM Pitruzzello and Tessari brought the defendant from the closet floor to arrest him, they pushed clothes off of the defendant's legs and shoes. As DUSM Tessari was assisting in the apprehension of the defendant, his hand hit a hard object in a black bag hanging in the closet.

DUSM Tessari felt the bag and immediately recognized the barrel of a firearm inside,[2] and pulled out the firearm. The firearm was a pistol-grip, sawed off shotgun. The Marshals took possession of the bag and the gun, and finished checking the defendant's person for additional firearms.

On July 12, 2005, a federal grand jury returned a one-count indictment charging the defendant with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year under 18 U.S.C. § 922(g)(1). On March 30, 2006, the defendant pled guilty to the indictment.

---

[2]  DUSM Tessari completed shotgun refresher training the day before the defendant's arrest, and he has completed shotgun training with both the U.S. Marshal Service and the U.S. Navy.

## II. SENTENCING CALCULATION

### A. Statutory Maximum

The defendant pled guilty to an indictment charging him with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year in violation of Title 18, United States Code, Section 922(g). The maximum sentence for that crime is ten years imprisonment, a period of supervised release of not more than three years, and a fine in the amount of $250,000.

### B. Guidelines Calculation

The government agrees to the Guidelines calculations utilized in the Pre-Sentence Report ("PSR"), which correctly calculated the defendant's total offense level at 21. See PSR ¶ 25. The PSR also correctly calculated the defendant's criminal history as Category V. See PSR ¶ 34. Therefore, the guideline range for the defendant is correctly calculated in the PSR as 78 to 87 months. See PSR ¶ 61. The PSR writer did not find factors warranting that a downward departure. See PSR ¶ 74. For the reasons set forth, infra Section III of this Memorandum, the government respectfully recommends that the Court sentence the defendant to 70 months.

## III. B. SENTENCING RECOMMENDATION.

In determining the appropriate sentence, the Court "shall consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. Section 3553(a)(2)(A). In this case, the defendant possessed a loaded firearm, while traveling on a commuter train. At the time the defendant possessed the firearm, he had previously been convicted of a drug offense, a robbery offense, and a firearm offense. The defendant performed poorly while under court supervision. The

defendant absconded from a conditional release program while serving his robbery sentence, his parole was revoked while serving his sentence for his weapons offense, and at the time of this offense the defendant was on parole with the State of New York. The defendant has shown a clear pattern of violating the law and a complete disregard for court orders. The defendant has accepted responsibility for his criminal conduct in this case. The defendant's conduct in this case, and criminal history, warrants a sentence of 70 months.

It is vital that the Court send a message to both the defendant and the community that the repeated criminal acts, including possession of guns and drugs in the community will not be tolerated. It is a bedrock principle in our criminal justice system that each person is responsible for his actions and, as a result, accountable for them. The defendant is no exception.

Accordingly, the government believes that a term of incarceration of 70 months is appropriate.

## IV. CONCLUSION

Wherefore, the government respectfully requests that the Court sentence the defendant to a term of incarceration of 70 months, representing the low-end of the sentencing range of 70 - 87 months.

> Respectfully submitted,
>
> KENNETH L. WAINSTEIN
> UNITED STATES ATTORNEY
>
> _____
> ANTHONY SCARPELLI
> Assistant United States Attorney
> Organized Crime & Narcotic Trafficking Section
> 555 4th Street, N.W., Room 4816
> Washington, D.C. 20530
> (202) 353-1679

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Rita Bosworth, Esquire, via ECF, on this 7th day of June, 2006.

> _____
> ANTHONY SCARPELLI
> ASSISTANT UNITED STATES ATTORNEY